a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MOBARIZ SEDIQI #A068-141-888, Petitioner | CIVIL DOCKET NO. 1:25-CV-01699 SEC P |
| VERSUS | JUDGE EDWARDS |
| U S IMMIGRATION & CUSTOMS ENFORCEMENT, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by pro se Petitioner Mobariz Sediqi ("Sediqi"), an immigration detainee at Winn Correctional Center in Winnfield, Louisiana. Sediqi alleges that his detention is unconstitutional.

Because there is no significant likelihood of Sediqi's removal in the reasonably foreseeable future, the Petition should be GRANTED.

## I.   Background

Sediqi is a native and citizen of Afghanistan, who entered the United States without inspection on or about November 6, 2024. ECF No. 6 at 1; 14-1 at 1. He was apprehended by immigration officials that same day and placed into Expedited Removal proceedings under Immigration and Nationality Act ("INA"), § 235(b)(1). *Id.* Sediqi expressed fear of returning to his home country and was processed for a credible fear interview. *Id.* at 2. However, on December 10, 2024, an asylum officer

1

issued a negative credible fear determination.  *Id.*  On December 19, 2024, an immigration judge affirmed the negative credible fear determination, "sending the case back to DHS for removal of the Petitioner."  ECF No. 14-1 at 2.

Thereafter, the following activities are noted in the Declaration:

- On or about February 13, 2025, ERO elevated the case to the Removal Division at Headquarters.

- On or about March 20, 2025, ERO reached out to the Removal Division at Headquarters requesting an update.

- On or about April 23, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update.

- On or about May 21, 2025, ERO sent a request for an Afghan Transportation Letter Required for Removal to the U.S. Embassy in Doha, Qatar, for delivery to the Afghan Embassy.

- On or about May 27, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update.

- On or about June 9, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update.

- On or about August 3, 2025, the Petitioner made known to ERO that he has ties to Suriname.

- On or about August 5, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update.

- On or about September 9, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update.

- On or about September 9, 2025, ERO received update from Removal Division at Headquarters that the Petitioner was on the list of Afghan nationals needing transportation letters, and that the Removal Division at Headquarters was working to obtain a transportation letter.

- On or about November 5, 2025, ERO reached out to the Removal Division at Headquarters requesting an update on the pending transportation letter.

- On or about December 24, 2025, ERO again reached out to the Removal Division at Headquarters requesting an update on the pending transportation letter.

- On or about February 18, 2026, ERO requested additional information from the Petitioner about his claim of status in Suriname.

- On or about March 13, 2026, ERO again reached out to the Removal Division at Headquarters requesting an update on the pending transportation letter.

- On or about April 17, 2026, ERO again reached out to the Removal Division at Headquarters requesting an update on the pending transportation letter.

- On or about April 17, 2026, ERO sent inquiry to the Petitioner, asking if he had status in any country other than Afghanistan.

- On or about May 11, 2026, ERO again reached out to the Removal Division at Headquarters requesting an update on the pending transportation letter.

- As of May 19, 2026, ERO continues to work with the Headquarters Removal Division to facilitate removal of the Petitioner from the United States.

ECF No. 14-1 at 2-3.

## II. Law and Analysis

The Court has jurisdiction to consider Sediqi's challenge to his continued detention. *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, . . . the Court retains jurisdiction to review his detention."); *Kokoreva v. Unknown Party*, No. 3:25-CV-1700, 2025 WL 2981626, at *2 (N.D. Tex. Oct. 7, 2025) ("[T]he Court retains jurisdiction to review a noncitizen's detention

3

insofar as that detention presents constitutional issues, such as those raised in a habeas petition.") (quotation omitted), *report and recommendation adopted*, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025); *Yousef v. Warden Richwood Corr. Ctr.*, No. 25-CV-1947, 2025 WL 3784489, at *2 (W.D. La. Dec. 10, 2025), *report and recommendation adopted*, 2026 WL 19378 (W.D. La. Jan. 2, 2026).

After an alien is ordered removed, the Government has 90 days with which to effectuate the removal. *See* 8 U.S.C. § 1231(a)(1)(A). However, § 1231 permits detention beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In fact, detention for up to six months is "presumptively reasonable." *Id.* Afterward, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release him. *Id.; see also* 8 CFR § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *See Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

If the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

4

either rebut that showing with evidence or release the alien.  *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018); *Zadvydas*, 533 U.S. at 701.

The Government acknowledges that Sediqi is subject to an expedited order of removal, which became administratively final when the immigration judge affirmed the negative credible fear determination.[1]  ECF No. 14 at 1; 14-1 at 2.  Sediqi has been detained awaiting that removal since December 19, 2024, so the presumption of reasonableness no longer applies.  *See Shengelia v. Ortega*, 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *see also Altayb v. U.S. Immigration & Customs Enf't*, 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *adopted by* 2026 WL 544292 (W.D. La. Feb. 26, 2026).

Sediqi alleges there is no significant likelihood of his removal in the foreseeable future due to the lack of diplomatic relations between the United States and Afghanistan.  ECF No. 13 at 1, 5.  He also asserts that ICE officers have informed him that his removal to Suriname and Mexico as alternative countries is not possible. ECF No. 18.

The burden shifts to the Government to provide evidence of a significant likelihood that Sediqi will be deported in the reasonably foreseeable future.  The evidence presented merely documents that ERO "reached out" to the Removal Division at Headquarters numerous times for an update.  But the only update ERO

---

[1] Although expedited removal proceedings are governed by 8 U.S.C. § 1225, the Government's Response clearly proceeds on the understanding that a final (albeit expedited) removal order exists, and that § 1231 provides the statutory basis for Sediqi's detention.  *See* ECF No. 14 at 2; *see also Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Once those proceedings end, detention under § 1225(b) must end as well").

ever received was on September 9, 2025, stating that Sediqi was "on the list" of Afghan nationals needing transportation letters, and Headquarters was "working to obtain a transportation letter." ECF No. 14-1 at 2. Nine months later, there is still no letter or any indication of whether that letter is forthcoming. Additionally, the record reflects no response to the May 21, 2025 request sent through the U.S. Embassy in Doha, Qatar, seeking an Afghan transportation letter. ECF No. 14-1 at 2-3.

The Government's numerous requests for updates and the September 9, 2025, response do not overcome its burden to establish that there is a significant likelihood of removal. The Government has been attempting to remove Sediqi since at least February 2025, yet it produced no evidence that removal is likely to occur in the reasonably foreseeable future. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

Notably absent from the Declaration is any indication that a third country has been contacted. Although the Government asked Sediqi about his status in Suriname, the Declaration lacks any indication that Sediqi has status or that travel documents have been requested from Suriname. ECF No. 14-1 at 3.

"A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." Nguyen v. Noem, 5:25-CV176, 2026 WL 237282, at *9 (S.D. Tex. Jan. 28, 2026) (citing Balouch v. Bondi, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted)). Sediqi

6

is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable," only that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701-02.  On this record, Sediqi has provided a good reason to believe there is no significant likelihood of his removal in the foreseeable future, and the Government's evidence fails to establish otherwise.

### III.  Conclusion

Because there is no significant likelihood of Sediqi's removal in the reasonably foreseeable future, IT IS RECOMMENDED that the Petition (ECF No. 1) be GRANTED and Sediqi be RELEASED under appropriate conditions.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, June 23, 2026.

_____
JOSEPH H.L. PEREZ-MONTES

7

UNITED STATES MAGISTRATE JUDGE